# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KATHY HOBART,             )
                             )
          **Plaintiff,**     )
                             )       **CIVIL ACTION**
**v.**                       )
                             )       **No. 08-2545-CM**
                             )
**BLUE CROSS AND BLUE**    )
**SHIELD OF KANSAS, INC.,**   )
                             )
          **Defendant.**    )
_____)

## MEMORANDUM AND ORDER

Plaintiff Kathy Hobart ("plaintiff") brings this action against defendant Blue Cross and Blue Shield of Kansas, Inc. ("defendant"). Plaintiff alleges retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, *et seq.*, alleging defendants violated the FMLA by terminating her employment. This matter is before the court on defendant's Motion for Summary Judgment (Doc. 36).

## I.    Factual Background[1]

Defendant is a mutual insurance company owned by its policy holders. Plaintiff began her employment with defendant in January 1996 as an administrative assistant. Throughout her tenure with defendant, plaintiff requested, and was granted, FMLA leave; she requested leave in March 1998, June 1998, May 2000, October 2001, March 2007, April 2007, July 2007, and April 2008. Her first request for FMLA leave was denied because she was not yet eligible for FMLA leave—she had not been employed by defendant for the requisite twelve months. Two other requests were also

---

[1]The court construes the facts in the light most favorable to the non-moving party pursuant to Fed. R. Civ. P. 56. The court has combined the facts proposed by both parties, and included only those that are relevant, material, and properly supported by the record.

denied; she had failed to submit the necessary Healthcare Provider Certification on one occasion and failed to submit her request within the required time period on the other occasion.

Even though she used FMLA leave, she received exceptional evaluations, promotions, and pay increases. She was promoted in May 1998 and August 2006. Plaintiff received overall ratings of "distinguished"—the highest rating—in 2001, 2002, 2003, and 2005 and an overall rating of "commendable"—the second highest rating—in 2004. In November 2006, plaintiff was the Unit Assistant in the Membership Department and received a proficiency review and a 3% raise from Robin Moody. Her 2006 evaluation acknowledged the importance of her support and dedication to the success of the unit, and stated, "Kathy, you have done an outstanding job. . . ." That same month, Lynnell Logan became the supervisor of the Membership Department. In July 2007, as part of plaintiff's performance review, Ms. Logan wrote to plaintiff, stating:

> You have done a wonderful job in keeping the unit going. You always have a positive attitude no matter what the situation is. You are always willing to help and you go out of your way to do whatever I ask of you. I may not tell you as much as I tell our employees but I really do appreciate you and all that you do. You make my job easy and I am grateful for that. You do your best to make sure everything is in order before you leave and you help me stay on top of things. I just ask that you keep up the good work and know that I do value you.

In April 2008, plaintiff requested FMLA leave for treatment that required extended leave from April 9, 2008 through May 23, 2008. Defendant approved plaintiff's request. Ms. Logan was plaintiff's supervisor at the time of the request, as she had been during plaintiff's March 2007, April 2007, and July 2007 FMLA leave.

Plaintiff's poor performance issues began in April 2008. On April 2, 2008, prior to plaintiff's April 2008 FMLA leave, plaintiff sent an email, with a copy to Ms. Logan, admitting that she had missed that a group needed to be tested. While plaintiff was on FMLA leave, defendant discovered other issues related to plaintiff's performance. Several of plaintiff's co-workers and subordinates

voiced concerns about plaintiff to Ms. Logan. On April 16, 2008, Ms. Logan, Ms. Moody—Ms.
Logan's supervisor—and Kathy Hackathorn learned that plaintiff had failed to update the broker
information when she renewed the Steel & Pipe Supply Company group in December 2007. As a
result, the salesman for the group had not received his commission for that sale, which amounted to
$14,406.21. Ms. Logan informed Ms. Moody that she would address the issue with plaintiff.
Plaintiff returned to work on May 27, 2008. After plaintiff returned, Ms. Logan addressed the unpaid
commission for Steel & Pipe Supply Company with plaintiff.

On May 30, 2008, three business days after returning from FMLA leave, plaintiff reported
that two different groups were completed and ready for enrollment; however, the plan descriptions
for both groups were incorrect. Plaintiff admitted she made the errors in the plan descriptions. On
June 4, 2008, Ms. Logan and Ms. Hackathorn met with plaintiff to address the issues that had arisen
during and after plaintiff's April 2008 FMLA leave. During the meeting, plaintiff was asked to
prepare an action plan that would ensure these problems were dealt with effectively. Plaintiff was not
given written instructions for the action plan, but she took handwritten notes to ensure that she knew
what needed to be addressed. Plaintiff's notes listed the following topics: "Interaction with
Employees; Greet each," "Knowledge Level," "Leadership," "Shifting of Work," and
"Understanding and following directions." Plaintiff was asked to submit her action plan in about one
week following the meeting.

On June 12, 2008, plaintiff again admitted that she made a mistake by not ensuring certain
work was completed. When Ms. Logan inquired as to why plaintiff had not made sure the work was
done, plaintiff responded, "I'm sorry I missed forwarding this on. I assumed Brenda would be
handling, but should have done it myself or made sure it got done." That same day, plaintiff went to
see Ms. Hackathorn to ask for guidance on her action plan. Ms. Hackathorn immediately called Ms.

Logan in to join the meeting. Any time plaintiff tried to talk during the meeting, Ms. Logan stopped her. At that time, plaintiff did not have a completed action plan and did not believe there was anything she needed to work on. During the meeting, Ms. Logan indicated that plaintiff's attitude had gotten worse since the meeting on June 4, 2008. She also mentioned that plaintiff was not talking to people in her unit unless she had to and that plaintiff had made a comment in a BluesEnrolls training that upset or offended people. Ms. Logan also told plaintiff that plaintiff needed to give her an acceptable action plan no later than June 18, 2008 and that failure to do so would result in plaintiff's immediate termination. Plaintiff received a Notice of Unsatisfactory Performance that day. The following day, June 13, 2008, Julie Boaz sent Ms. Logan an email complaining about plaintiff's behavior at the BluesEnroll training.

On June 18, 2008, plaintiff provided her action plan to Ms. Logan and Ms. Hackathorn. Her action plan was substantially as follows:[2]

> Please accept my plan of action for the following and let me know if there is anything I need to change:
>
> Interaction with Employees: Greet each employee each day. Make a point of coming out of my cubicle several times a day. Could possibly have one on one meeting's [sic] with each employee bi-monthly.
>
> Knowledge Level-If there is a question I do not have an answer for, find out the answer and take notes in case the question comes up again. Share answers with entire unit in case someone is doing things differently.
>
> Leadership-I plan to take any Leadership classes available. I will try to lead by example of my actions.
>
> Shifting of Work/Understanding and Following Directions: I feel these two go together and I plan to repeat directives to make sure I understand expectations.
>
> Again, please let me know if anything needs adjusted.
>
> Thank You,

---

[2] This version of plaintiff's action plan may include the leadership revisions requested by Ms. Logan.

Kathy Hobart

Upon receiving the action plan, Ms. Logan told plaintiff that her plan did not address plaintiff's leadership issues. Ms. Logan told plaintiff that once she received information about plaintiff's plan to improve her leadership abilities, she and Ms. Hackathorn would review the plan and let plaintiff know what was next. Ms. Moody suggested to Ms. Logan and Ms. Hackathorn that they ought to tell plaintiff that her action plan was not what they had in mind and give her more specific guidance. Ms. Logan did not address the inadequacies of the action plan with plaintiff.

On June 19, 2008, plaintiff had a meeting with Ms. Logan and Ms. Hackathorn, at which time Ms. Logan advised plaintiff that the action plan was unacceptable and that plaintiff was being terminated. Ms. Logan testified that, after she saw plaintiff's plan of action, she did not believe plaintiff was making a serious effort to improve the performance issues that had been identified. She further testified that if, after June 4, 2008, plaintiff had come to her and had prepared an action plan that suggested plaintiff was serious about correcting the problems, Ms. Logan would not have proceeded with plaintiff's termination. Plaintiff does not recall any mention during this meeting of her use of FMLA leave. Ms. Logan testified that plaintiff's FMLA leave did not affect her analysis of plaintiff's situation in any way, that she encourages employees to request FMLA leave in qualifying circumstances, and that she used FMLA leave for her and her children's health conditions when she worked for defendant. But plaintiff recalls Ms. Logan complaining about other employees taking FMLA leave.

Prior to terminating plaintiff and pursuant to defendant's termination policy, Ms. Logan met with Tonya Terrel, defendant's EEO/Affirmative Action Coordinator, to discuss plaintiff's situation and terminating plaintiff's employment. Ms. Terrel approved plaintiff's termination.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. Discussion

The FMLA prohibits retaliation by employers against employees who exercise their statutory rights. 29 U.S.C. § 2615(a)(2); *Ney v. City of Hoisington, Kan.*, 264 F. App'x 678, 682 (10th Cir. 2008). When analyzing FMLA retaliation claims, the court applies the traditional burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208 (10th Cir. 1997) (citation omitted). Under this framework, the plaintiff must establish a prima facie case of retaliation. If the plaintiff does so, the defendant may rebut the plaintiff's prima facie case of retaliation by offering legitimate, non-retaliatory reasons for the adverse action. *Id.* (citation omitted). Once a defendant offers such reasons, the plaintiff must present evidence that the defendant's reasons are unworthy of belief. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1321 (10th Cir. 1997). The plaintiff's burden "is only to demonstrate a genuine dispute of material fact as to whether the proffered reasons were unworthy of belief." *Id.* (citation omitted). The plaintiff's evidence can also allow for an inference that the proffered non-discriminatory reasons were a *post hoc* fabrication. *Plotke v. White*, 405 F.3d 1092, 1102–03 (10th Cir. 2005). However, the plaintiff's "mere conjecture that [her] employer's explanation is a pretext for intentional

discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

Defendant argues that plaintiff cannot establish a prima facie case of retaliation and that, even if she establishes a prima facie case, defendant had a legitimate, non-retaliatory reason for terminating plaintiff's employment—plaintiff's performance issues.

To establish a prima facie case of FMLA retaliation, plaintiff must show: (1) she engaged in protected activity; (2) a reasonable employee would have found defendant's action materially adverse; and (3) there is a causal connection between her protected activity and defendant's adverse action. *Ney*, 264 F. App'x at 682. Defendant does not dispute that plaintiff engaged in protected activity or that her termination was a materially adverse action. Defendant simply argues that there is no causal connection between plaintiff's protected activity and defendant's adverse action.

The central question to this issue is "'whether the plaintiff has demonstrated that the [employer's] action occurred under circumstances which give rise to an inference of unlawful discrimination.'" *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006) (quoting *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002)). "A causal connection may be demonstrated by evidence such as protected conduct closely followed by adverse action." *Hysten v. Burlington N. Santa Fe Ry. Co.*, 372 F. Supp. 2d 1246, 1254 (D. Kan. 2005); *see also Treat v. Conoco Philips Co.*, No. Civ-05-1330-C, 2007 WL 464707, at *2 (W.D. Okla. Feb. 8, 2007) (finding the time between events to be "key to the inquiry" and comparing Tenth Circuit cases—"*Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (one and one-half month period between protected activity and adverse action may by itself, establish causation) *with Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three-month period, standing alone, is insufficient to establish causation)"). Plaintiff identifies the close proximity as being less

than a month from May 27, 2008—the date she returned from protected leave—to her first warning and termination. The court finds that plaintiff has established a prima facie case of FMLA retaliation.

The burden shifts to defendant to articulate a legitimate, nondiscriminatory reason. Defendant cites plaintiff's poor work performance and demeanor as the reason for her being disciplined and terminated. Specifically, defendant refers to plaintiff's failure to submit a sufficient plan of action, not speaking to her subordinates, mistakes in her work, and complaints about the manner in which she treated co-workers. Plaintiff does not provide any response to this issue for her FMLA retaliation claim. The court finds that defendant has articulated a legitimate, non-retaliatory reason for terminating plaintiff's employment. Thus, the court must consider whether plaintiff has presented evidence to raise a genuine issue of material fact regarding defendant's proffered reason for her termination.

Plaintiff may establish pretext by demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" *Twilley v. Integris Baptist Med. Ctr., Inc.*, 16 F. App'x 923, 925 (10th Cir. 2001) (quoting *Morgan*, 108 F.3d at 1323). This is typically done by (1) showing the defendant's legitimate reason is false, (2) showing that "the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances . . . ; or (3) [showing] that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (citations omitted).

Plaintiff argues that defendant's legitimate reason is false, relying on the following facts:

- plaintiff's termination occurred less than a month from the date she returned from protected leave;

- plaintiff had an exemplary record and good performance reviews prior to her April 2008 FMLA leave;
- Ms. Moody testified that plaintiff was a knowledgeable employee and possessed the ability to lead others;
- plaintiff had recently been given an employee recognition bonus;
- Ms. Moody indicated that action plans were usually coupled with written direction;
- Ms. Logan refused to listen to plaintiff during the June 12, 2008 meeting and gave plaintiff a written notice of unsatisfactory performance;
- plaintiff's supervisors did not give her adequate direction and assistance with her action plan;
- plaintiff's direct supervisor, Ms. Logan, had previously expressed displeasure with other employees' use of FMLA leave; and
- Ms. Logan made negative remarks about plaintiff's FMLA leave in a greeting card.

The Tenth Circuit has "never allowed 'even very close temporal proximity [taken alone] to operate as a proxy for the evidentiary requirement that the plaintiff demonstrate pretext.'" *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1290 (10th Cir. 2007) (citing *Metzler*, 464 F.3d at 1172). A plaintiff can, however, survive summary judgment when temporal proximity is coupled with additional facts that support pretext. *Metzler,* 464 F.3d at 1172 (holding the plaintiff must "present evidence of temporal proximity *plus* circumstantial evidence of retaliatory motive" to establish pretext). Here, there is evidence of temporal proximity, but the court must consider the other evidence presented by plaintiff in order to determine whether plaintiff has shown defendant's business reason is pretextual. For the following reasons, the court finds that plaintiff has raised a genuine issue of fact as to whether defendant's alleged legitimate business reasons for terminating her employment were legitimate.

First, the parties agree that plaintiff had not received a negative evaluation prior to her April 2008 FMLA leave. In July 2007, Ms. Logan gave plaintiff a positive performance review, stating "You have done a wonderful job in keeping the unit going. You always have a positive attitude no matter what the situation is." With the exception of the April 2 mistake, all of plaintiff's negative performance issues arose while plaintiff was on FMLA leave or within a month of her return from

FMLA leave. Second, plaintiff's supervisors failed to assist plaintiff with an action plan. Ms. Logan testified that if, after June 4, 2008, plaintiff had come to her and had prepared an action plan that suggested plaintiff was serious about correcting the problems, Ms. Logan would not have proceeded with plaintiff's termination. But plaintiff testified that when she tried to meet with Ms. Hackathorn on June 12, 2008 to ask about her action plan, Ms. Hackathorn called Ms. Logan into the meeting. Plaintiff further testified that Ms. Logan stopped plaintiff when plaintiff tried to talk during the June 12, 2008 meeting. Additionally, instead of providing plaintiff guidance in re-writing the action plan, as Ms. Logan's supervisor suggested, Ms. Logan terminated plaintiff's employment. Finally, plaintiff testified that Ms. Logan had made negative comments regarding other employees using FMLA leave. Many of these issues turn on the credibility of the witnesses, which is for the jury to determine. *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1216 (10th Cir. 2003) ("Credibility determinations [and] the weighing of the evidence . . . are jury functions, not those of a judge.").

In combination with the evidence of temporal proximity, this evidence—although far from conclusive—raises an issue of material fact as to whether defendant offered a pretextual reason for terminating plaintiff. Summary judgment is inappropriate in these circumstances and must be denied. Defendant's motion for summary judgment on plaintiff's FMLA retaliation claim is denied.

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Doc. 36) is denied.

Dated this <u>24th</u> day of December 2009, at Kansas City, Kansas.

<u>s/ Carlos Murguia</u>
**CARLOS MURGUIA**
**United States District Judge**